Steven **MITCHELL**, Employee–Appellant,

v.

**DIVISION OF EMPLOYMENT SECURITY, STATE OF MISSOURI, Respondent,**

and

**Mississippi Valley Forest Products, Inc., Employer–Respondent.**

No. 20536.

Missouri Court of Appeals, Southern District, Division One.

May 7, 1996.

Stephen W. Daniels, Rolla, for employee-appellant.

Ninion S. Riley, Jefferson City, for respondent Division of Employment Security.

GARRISON, Judge.

Steven Mitchell (Employee) challenges the Labor and Industrial Relations Commission's (Commission) denial of his claim for unemployment benefits under Chapter 288, known as the Missouri Employment Security Law. We affirm.

In the absence of fraud, the findings of the Commission as to the facts are conclusive if supported by competent and substantial evidence. § 288.210, RSMo 1994. We defer to the Commission's resolution of credibility and consider only those facts and inferences favorable to and consistent with the Commission's decision. *Thurman v. Labor & Indus. Relations Comm'n,* 706 S.W.2d 601, 602 (Mo.App.E.D.1986). Consistent with this standard, the following are the facts of the instant case.

Employee worked for Mississippi Valley Forest Products, Inc. (Employer) at its plant next door to his home in Success, Missouri, earning $4.50 per hour. For reasons not apparent from the record, Employee's job at Success was, or was going to be, terminated. In April, 1995, Employee informed Employer that he intended to retire in September or October of 1995 and requested that he be permitted to work until that time. Employer then arranged for Employee to work at its plant in Salem, Missouri. This involved a 75–mile round trip from Success which required a one-hour drive each way. Employ-

ee's compensation remained $4.50 per hour, but Employer agreed to pay him an additional $75 per month as compensation for travel expenses. Employer also agreed that instead of the normal workday of 7:30 to 4:00, his hours at Salem would be 8:00 to 3:15. He was paid, however, as if he worked until 5:00 so that he was compensated for most of his travel time. Although Employer intended to continue this arrangement until Employee's anticipated retirement, Employee quit the job at Salem after five or six days. He told Employer that he had to "get up earlier," Salem was too far away, there was too much traffic, and the travel was causing too much wear and tear on his 1985 Oldsmobile. He also testified that he quit because he could not afford the drive to Salem.

Employee's claim for unemployment benefits was denied by a deputy of the Missouri Division of Employment Security. After appeals by Employee, the denial was affirmed by a referee of the Division as well as by the Commission. Denial of the claim was based on a determination that Employee left his employment voluntarily without good cause attributable to his work or Employer, thereby disqualifying him for benefits pursuant to § 288.050.1(1), RSMo 1994.

An employee who quits a job is qualified for unemployment benefits only if he does so for good cause, a matter which he has the burden to establish. *Belle State Bank v. Industrial Comm'n,* 547 S.W.2d 841, 844 (Mo.App.S.D.1977). A worker has good cause to terminate employment voluntarily when that conduct is in conformity with what an average person, who acts reasonably and in good faith, would do. *Contractors Supply Co. v. Labor & Indus. Relations Comm'n,* 614 S.W.2d 563, 564 (Mo.App.W.D.1981). The term "good cause" has no fixed meaning, but depends on the circumstances of each case. *Citizens Bank v. Industrial Comm'n,* 428 S.W.2d 895, 897 (Mo.App.E.D.1968). The reason "good cause" is required is to eliminate what might otherwise be an incentive to quit work, in that the Employment Security Law is intended to benefit only those persons unemployed through no fault of their own. *Division of Employment Sec. v. Labor & Indus. Relations Comm'n,* 625

S.W.2d 882, 884 (Mo.App.E.D.1981). It has been said that "good cause" is limited to instances where the unemployment is caused by external pressures so compelling that a reasonably prudent person would be justified in giving up employment. *Id.* Any decision to give up employment must be in good faith and consistent with a genuine desire to work and be self supporting. *Id.*

 Whether the favorable evidence and inferences established good cause is a question of law. *Belle State Bank v. Industrial Comm'n,* 547 S.W.2d at 844. Although we review the evidence, as to questions of fact, in the light most favorable to the Commission's finding to determine whether it could have reasonably reached the decision it did, we are not bound by the Commission's decision as to matters of law. *Id.*

 On this appeal, Employee contends that he established good cause for terminating his job with Employer because the required travel made it economically unfeasible. He admits, however, that the monthly allowance of $75 was "almost adequate for his actual gas expense," and that being compensated for driving time "would appear to be generous on the surface." His main contention is identified by the following statements:

> But [Employer] freely admits that it was paying [Employee] $4.50 per hour, only $.25 above the minimum wage pursuant to federal law. Therefore, when one considers the depreciation on [Employee's] 1985 Oldsmobile at the additional mileage rate of 18,500 miles per year, the additional maintainance [sic] on [Employee's] vehicle for tire wear, oil changes, and the inevitable hidden costs and potential major repairs on a vehicle of that vintage because of the extra work related mileage, [Employer] was, in effect, asking [Employee] to work for less than $4.25 per Hour when these transportation costs are deducted from [Employee's] $4.50 hourly wage.

He contends, therefore, that good cause was established because the anticipated travel costs would result in his actual income being decreased to below minimum wage. He cites no authority in support of that proposition, however.

There was no evidence concerning any additional expense incurred by Employee except that of gasoline, which he admits was "almost" paid for by the additional compensation. He made no attempt to quantify any expense concerning depreciation, maintenance, and the "inevitable hidden costs" upon which he now attempts to justify his action in quitting. In *Szojka v. Unemployment Compensation Bd. of Review,* 187 Pa.Super. 643, 146 A.2d 81, 82 (1958), the employee claimed good cause for quitting his job after a change of plant location necessitated travel of 32 miles each way. Despite the fact that he was earning only $2 per hour, the court noted, in denying his claim, that "there [was] no evidence that the transportation cost would make it so economically burdensome as to make continued employment unreasonable." *Id.* at 83.

There was also no evidence that Employer was acting arbitrarily or for the purpose of treating Employee unfairly by making work available for him at the Salem plant. To the contrary, it was apparently for the purpose of providing work for him until his anticipated retirement in a few months. In *Charles v. Missouri Div. of Employment Sec.,* 750 S.W.2d 658, 661 (Mo.App.W.D.1988), the court said, in holding that the employee had not voluntarily terminated her job for good cause, that:

> Absent discriminatory or unfair or arbitrary treatment, mere dissatisfaction with working conditions does not constitute good cause for quitting employment unless the dissatisfaction is based upon a substantial change in wages or working conditions from those in force at the time the claimant's employment commenced.

In the instant case, there was no evidence that the matter about which Employee complains, and on which he hinges his contention of good cause, was unknown and not accepted by him when he agreed to work at the plant in Salem. In *Brannock v. Labor & Indus. Relations Comm'n,* 745 S.W.2d 722, 723 (Mo.App.W.D.1987), the employee worked for the employer in Kansas City as an installer of underground watering systems for $6.00 per hour. He accepted work with

the employer near Jefferson City at $8.00 per hour in addition to reimbursement of some of his expenses for working out of town. He quit the job when inclement weather resulted in decreased working hours, and contended that he could not get by on the reduced hours because working out of town cost him $80 per week. The court held that these circumstances did not constitute good cause for quitting, saying:

> He agreed to the terms that took him to the job in New Bloomfield. The circumstances he identifies as unusual enough to justify termination were express in the offer or could have been anticipated with only minimal foresight. There was no unilateral imposition of terms or deception. Having accepted the work and the attendant conditions, [employee] cannot now argue the conditions compell [sic] a characterization of good cause on his termination.

*Id.* at 724.

We also note that in order to establish good cause, an employee must prove that an effort was made to resolve the matter before resorting to the drastic remedy of terminating the job. *Tin Man Enterprises, Inc. v. Labor & Indus. Relations Comm'n,* 866 S.W.2d 147, 149 (Mo.App.E.D.1993). This is consistent with the purpose of the Missouri Employment Security Law, which is to provide monetary relief for persons unemployed through no fault of their own. *Clark v. Labor & Indus. Relations Comm'n,* 875 S.W.2d 624, 627 (Mo.App.W.D.1994). Missouri courts have held in a number of cases that an employee's failure to attempt resolution of the matters which were given as a reason for quitting a job indicates a lack of good cause and justifies a denial of unemployment benefits. *See Hessler v. Labor & Indus. Relations Comm'n,* 851 S.W.2d 516, 518–19 (Mo. banc 1993); *Kirn v. Labor & Indus. Relations Comm'n,* 700 S.W.2d 523, 525 (Mo.App.E.D.1985); *Division of Employment Sec. v. Labor & Indus. Relations Comm'n,* 636 S.W.2d 361, 363–64 (Mo.App. E.D.1982); *Contractors Supply Co. v. Labor & Indus. Relations Comm'n,* 614 S.W.2d at 565; *Central Mo. Paving Co. v. Labor & Indus. Relations Comm'n,* 575 S.W.2d 889, 892 (Mo.App.W.D.1978); *Belle State Bank v.*

*Industrial Comm'n,* 547 S.W.2d at 847. In the instant case, the evidence reveals no attempt by Employee to discuss or resolve with Employer the effects of the travel expense before quitting.

In *Division of Employment Sec. v. Labor & Indus. Relations Comm'n,* 625 S.W.2d at 885, an employee was held to have terminated her job without good cause attributable to her work or employer. In that case, the employee did "piecework" and was paid on the basis of the number of pieces of work completed. She quit when the amount of her work was reduced by about one-half, although there was no decrease in her rate of pay. The court held that it was "unable to say that in such a situation a reasonable worker, seized with a genuine desire to work and be self supporting, would prefer no work at all." *Id.* at 884. The court also distinguished *Armco Steel Corp. v. Labor & Indus. Relations Comm'n,* 553 S.W.2d 506, 508 (Mo. App.W.D.1977), where an employee who quit his job rather than accept a transfer to a different department and a 44% reduction in pay was held to have done so for good cause. In doing so, the court noted that, unlike *Armco* which involved a decrease in the rate of pay, the employee in *Division of Employment Sec.* suffered a loss of income but was compensated at the same rate for the time spent working. 625 S.W.2d at 884.

Under the circumstances of this case, we conclude that the Commission did not err in denying benefits to Employee. Its decision is, therefore, affirmed.

MONTGOMERY, P.J., and BARNEY, J., concur.