**TRAVELERS EQUITIES SALES, INC., Appellant,**

v.

**DIVISION OF EMPLOYMENT SECURITY, Respondent.**

**No. WD 51774.**

Missouri Court of Appeals, Western District.

Aug. 6, 1996.

Richard J. Zalasky, St. Louis, for appellant.

Alan J. Downs, Government Counsel, St. Louis, for respondent.

Before LAURA DENVIR STITH, P.J., and ULRICH and SMART, JJ.

SMART, Judge.

This is an appeal from the Labor and Industrial Relations Commission affirming a ruling of an appeals tribunal holding that registered sales representatives of Travelers Equities Sales, Inc. are employees and not independent contractors under the Missouri Employment Security Law. Travelers Equities Sales, Inc. appeals, contending that the registered representatives are independent contractors under the Employment Security Law. The decision of the Labor and Industrial Relations Commission is reversed.

The Division of Employment Security ("the Division") determined that as of January 1, 1986, David K. Duren, Ronald G. Hebbeln, Raymond D. Santie, W.H. Snead, A.R. Tynon, G.C. Davis and all others similarly engaged as registered representatives performed services for "wages" in "employment" by Travelers Equities Sales, Inc. ("TESI") within the meaning of those terms as defined in §§ 288.034 and 288.036, RSMo 1986 and 1994. TESI appealed this determination to the appeals tribunal. The appeals tribunal issued a decision that the registered representatives are employees pursuant to § 288.034.5, RSMo 1986 and 1994. The referee succinctly set forth most of the key facts along with its findings:

The appellant is, and at all times pertinent to this decision has been, a registered broker/dealer regulated by the National Association of Securities Dealers (NASD) and the United States Securities Exchange Commission (SEC). It offers a variety of products such as mutual funds, limited partnerships, variable life annuities and managed accounts, through a network of registered representatives. It is the relationship between the registered representatives and the appellant that is at issue.

The registered representatives are insurance agents for Travelers Insurance Company who have taken the necessary steps to become licensed to sell the kinds of products offered by the appellant, and who have entered into an agreement with the appellant to do so. This agreement authorizes registered representatives to solicit customer applications and purchase orders for the appellant's products. The appellant remunerates the registered representatives for these services by way of commission.

The agreement requires the registered representative to remit immediately to the appellant all executed account documents, applications and orders along with the customer's check, which must be made out to the appellant or as directed by the appellant. The agreement prohibits the registered representative from soliciting any conditional orders for securities transactions without prior written approval of the appellant, and requires the applications or orders which may be set by the appellant. The agreement requires registered representatives to comply with rules and procedures set out in the appellant's financial services/securities handbook, with NASD rules, and with the acts and regulations administered by the SEC.

The agreement requires registered representatives to observe high standards of commercial honor and just and equitable principles of trade, to immediately report in writing to the appellant any complaint about the registered representative, to notify the appellant of any change in the registered representative's business and personal activity, to deliver to a customer at the time of a sales presentation any required then-effective prospectus, to successfully complete all appropriate examinations, and to solicit transactions only in jurisdictions where the registered representative is registered and licensed and where the appellant's products are approved for sale or use.

The agreement prohibits a registered representative from making representations directly or indirectly in solicitation of securities transactions except as are contained in a current prospectus or other authorized supplementary sales literature made available by the appellant, and prohibits a registered representative from soliciting business through mailings, advertisement or other media unless the content of any sales material used has been previously examined and approved by the appellant. The agreement requires the registered representative to maintain a separate file to keep and preserve copies of all correspondence concerning accounts and securities transactions solicited for the appellant, and requires the registered representative to make this file available for review at any time by the appellant or by authorities having jurisdiction. The agreement permits the registered representative to continue other employment with the appellant's prior knowledge except that no dual registration as a registered representative with another broker/dealer is permitted unless authorized by the appellant in writing and registered with NASD. In the event of termination of the agreement, which may be done unilaterally by either party at any time, the registered representative must surrender to the appellant any prospectuses, applications, forms, books, records, customer lists, or other materials or supplies furnished to the registered representative or created for the proper continuing maintenance and service of customer accounts.

Registered representatives typically perform their solicitation services at their insurance agency premises. They never perform such services at any of the appellant's premises. The appellant does not dictate the hours during which registered representatives are to perform solicitation services for the appellant's products. Registered representatives are required by the appellant to maintain a sufficient level of sales to justify the risk of violation of securities laws and regulations. The appellant supplies the registered represen-

tatives with certain business forms designed by the appellant to comply with the requirements of regulatory authorities, and registered representatives are required to use those forms. The appellant pays postage for transmittal of the required forms to the appellant. Solicitation materials and business cards used by the registered representatives are required to have the appellant's name on them. Until 1993, the appellant paid the licensure examination fee for registered representatives. The appellant pays license renewal fees for registered representatives, then bills the registered representatives for reimbursement unless certain product levels have been achieved, in which case such reimbursement is waived by the appellant. In accordance with NASD requirements, the appellant conducts annual face-to-face interviews with its registered representatives. The appellant also has its registered representatives complete a multipage questionnaire addressing issues of compliance with regulatory authorities. The appellant might terminate the relationship with a registered representative for violations of securities laws and regulations or for failure to disclose customer complaints. The appellant bonds each registered representative, as required by NASD.

The appeals tribunal found that the sales representatives of TESI are employees for purposes of the employment security laws. Neither party challenges the factual recitation set out above. The Division, however, suggests there are other pertinent facts, which we discuss below. TESI filed an application for review with the Labor and Industrial Relations Commission ("the Commission") contending the appeals tribunal had erred in applying the law. The Commission affirmed the decision of the appeals tribunal, adopting the opinion. This appeal followed.

### Standard of Review

This case is governed by Chapter 288, the Missouri Employment Security Law. In reviewing a decision of the Commission,

an appellate court may not substitute its judgment on factual matters for that of the commission. Section 288.210 provides that the Commission's findings of fact, if supported by competent and substantial evidence and absent fraud, shall be conclusive. Substantial evidence is evidence which has probative force on the issues, and from which the trier of facts can reasonably decide the case. *Nettie's Flower Garden, Inc. v. S.I.S., Inc.*, 869 S.W.2d 226, 231 (Mo.App.1993). This court is not bound by the Commission's conclusions of law, including statutory interpretation. *Division of Employment Sec. v. Hatfield*, 831 S.W.2d 216, 218 (Mo.App.1992). It is the court's duty to interpret and determine the legislative intent of the Missouri Employment Security law. *Division of Employment Sec. v. Labor & Indus. Relations Comm'n*, 617 S.W.2d 620, 622 (Mo.App.1981). In this case, the facts are not disputed. Section 288.210, RSMo, Supp.1996, like § 287.495, RSMo 1994, provides that the reviewing court may grant relief only when 1) the commission acted without or in excess of its powers, 2) the decision was procured by fraud, 3) the facts found by the commission do not support the award, or 4) there was no sufficient competent evidence in the record to warrant the making of the award. In view of the fact that § 288.210, Supp.1996, and § 287.495, RSMo 1994, prescribe exactly the same grounds for the granting of relief on appellate review, we regard *Davis v. Research Medical Center*, 903 S.W.2d 557 (Mo.App.1995) as applicable to employment security decisions as well as worker's compensation decisions. In *Davis*, which dealt with review of worker's compensation decisions, we said:

Findings and awards of the Commission which are clearly the interpretation or application of the law, as distinguished from a determination of facts, are not binding on the court and fall within the court's province of independent review and correction where erroneous. And, where the findings of ultimate fact are reached not by a process of natural reasoning from the facts alone, but rather by application of law, it is a conclusion of law and subject to reversal by the court.

*Id.* at 571. Thus, to the extent this appeal involves issues of law, we do not defer to the Commission. To the extent that it involves evaluating evidence supporting findings of the Commission, there is a two-step process set out in *Davis*.

In the first step, the court examines the whole record, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award, to determine if the record contains sufficient competent and substantial evidence to support the award. if not, the Commission's award must be reversed. If there is competent and substantial evidence supporting the award, the court moves to the second step, where it views the evidence in the light most favorable to the award, but must consider all evidence in the record, including that which opposes or is unfavorable to the award, take account of the overall effect of all of the evidence, and determine whether the award is against the overwhelming weight of the evidence.

*Davis v. Research Medical Center*, 903 S.W.2d 557, 571 (Mo.App.1995).

Because the facts in this case are not disputed, and yet the significance of the facts can be viewed in different ways, this case involves primarily the application of the law to the facts.

### Law Prior to July, 1989

In Point I, TESI claims that the Commission erred in finding that prior to July 1, 1989, the registered representatives had performed services for "wages" in TESI's "employment" because the evidence was insufficient to support the Commission's findings.

A general purpose of the Employment Security law is to provide for compulsory setting aside of unemployment reserves for the benefit of persons who become unemployed through no fault of their own. Section 288.020.1, RSMo 1986. The legislature has specifically declared that this law is to be liberally construed to accomplish that purpose. Section 288.020.2, RSMo 1986. Prior

to June 30, 1989, § 288.034.5, RSMo 1986 provided a three-part test for determining whether the services performed by an individual were subject to the Missouri Employment Security Law. Section 288.034.5, RSMo 1986 provides:

Irrespective of the usual tests for determining the existence of the independent contractor relationship as at common law, service performed by an individual for remuneration shall be deemed to be employment subject to this law unless it is shown to the satisfaction of the division that:

(1) Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and

(2) Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

(3) Such individual is customarily engaged in an independently established trade, occupation, profession or business.

In accordance with § 288.034.5, the first step in determining the status of the registered representatives as employees or independent contractors is to determine whether the registered representatives performed services for remuneration. There is no dispute that each individual performed services for remuneration. The next inquiry is whether the three requirements of § 288.034.5 have been met. The Commission found that TESI did not meet the first and third prongs of the test set forth in § 288.034.5. The Commission found that the second prong of the test, that the services of the registered representatives were performed outside of TESI's place of business, was met.

### Control of Performance

■ The first prong of the test involves the issue of control or direction over the performance of the services performed for TESI by the registered representatives. The record before us shows that the registered representatives were free from the direction or control of TESI concerning the daily services they performed as registered representatives. The only significant controls that TESI had over the representatives were dictated by the NASD, the SEC and state law. These rules must be followed by all brokers/dealers and cannot be interpreted in an isolated case as being "control or direction" within § 288.034.5 when such an interpretation would bring within the employment security law an entire industry which historically and logically includes many independent contractors. *See Yellow Taxi Co. of Minneapolis v. National Labor Relations Bd.*, 232 U.S.App. D.C. 131, 721 F.2d 366, 377 (D.C.Cir.1983); *National Labor Relations Bd. v. Associated Diamond Cabs, Inc.*, 702 F.2d 912, 922 (11th Cir.1983) (reasonable efforts to insure compliance with government regulations do not evidence control "unless pervasive control by the employer exceeds to a significant degree the scope of the government imposed control").

In the proceedings before the Commission, the Division claimed that TESI's control went beyond that regulated by law. Specifically, the Division pointed to three factors evidencing TESI's control over the registered representatives: (1) TESI provided training materials to the registered representatives; (2) TESI did not allow most registered representatives to offer certain securities for sale; and (3) TESI paid the license fees for representatives who achieved certain production levels. The record refutes the Division's contention that TESI furnished the registered representatives training materials which contained controls beyond those required by law. Mr. Alan Monbaron, TESI's Director of Compliance, testified before the appeals tribunal that the training manuals in question did not contain any regulation imposed by TESI, but that the manuals were a compilation of government regulations TESI was required to follow in order to stay in business. The Division did not present any evidence refuting Mr. Monbaron's testimony.

Generally, the representatives sell annuities, mutual funds, limited partnerships, and managed accounts. TESI does not handle stocks and bonds. An agent would have to deal through another broker to market stocks and bonds. The Division seeks to make much of the fact that these representatives do not generally sell stocks and bonds. Mr. Monbaron testified that only a few of the representatives sold stocks and bonds. He also testified that most of the representatives were not interested in selling stocks and bonds and that they did not come to TESI expecting to sell these securities. The record fails to show that TESI imposed a restriction of the type which might have some relevance to the nature of the relationship between TESI and the representative. The Division's emphasis on the very limited sale of stocks and bonds is misplaced. The fact that TESI did not encourage the sales representatives to offer a full line of investments, while perhaps pertinent, is not particularly significant in view of the fact that all of these representatives saw this as merely a supplemental part-time venture. An expansion of service would, to a large extent, have been inconsistent with the limited nature of the venture.

The Division contends that TESI paid for the licensing fees for individuals when their sales reached higher levels and that TESI terminated representatives whose sales were too low. While we agree with the accuracy of this contention, and while we agree that it is relevant to the analysis, we find it to be less than overwhelming in its weight. The record showed that sometimes representatives were reimbursed licensing fees if production levels were high. This evidence, and the fact that TESI might terminate a representative whose production was too low, was not shown to be either surprising or unusual for an industry of self-employed sales representatives. The reimbursement of the licensing fee is really in the nature of a bonus for reaching a production goal, which is not incompatible with independent contractor status. While such a factor is to be considered, it does not weigh heavily.

The Commission relied on *First Affiliated Sec., Inc. v. Labor & Indus. Relations Comm'n,* 738 S.W.2d 495 (Mo.App.1987) in concluding that the registered representatives were employees and not independent contractors. In *First Affiliated,* the Commission affirmed the decision of an appeals tribunal which determined that First Affiliated Securities, Inc., a securities broker, was an "employer" for purposes of unemployment compensation. *Id.* This court affirmed the trial court's decision. *First Affiliated* is distinguishable from this case on its facts. The licensees in that case could offer and solicit sales of securities "utilizing only FAS facilities." *Id.* The licensees were required to be in an exclusive relationship with FAS on sales of securities. They also were not permitted to sell securities for any other brokers. *Id.* Here, in contrast, the representatives did not use TESI's premises for the sale of securities, and they were allowed to sell securities for other brokers. *First Affiliated* does not apply in this case. We believe the Commission erred in its evaluation of the control factor.

### Independently Established Occupation

■ The third test under the statute is whether the registered representatives are "customarily engaged in an independently established trade, occupation, profession or business." The registered representatives working for TESI are paid commissions averaging approximately $3,000.00 per year. They are permitted to sell securities not offered by TESI and they are permitted to sell through other brokers. The record does not show that it is unusual for insurance representatives to engage in part-time securities sales in the fashion shown in this case. In attempting to discern industry practices, we take note of the decision of the appeals tribunal in *MML Investor Services, Inc.,* No. E–63–90. The facts in *MML* are virtually identical to those presented here. Each sales representative selling securities for MML was required to be an insurance agent for Massachusetts Mutual Life Insurance Company and had to be properly licensed to

sell securities; the representatives were paid a commission on a monthly basis; the annual average commission for 1989 was $1,321; they were free to contact anyone they wished to, and to set their own hours; after completing a sale, the representatives were required to return all documentation and payments to MML; the representatives were allowed to be affiliated with other brokers/dealers with MML's approval; MML provided no office space or supplies to the representatives. In *MML,* the appeals tribunal reversed the determination of the Division and found that the sales representatives were not employees for purposes of the Missouri Employment Security Law. Although a decision of an appeals tribunal is not legally authoritative, we believe the facts of the decision reflect the fact that the relationship between such representatives and the brokerages they represent is not unique. The Division also fails to show that the arrangement before us is unusual. We conclude that the registered representatives in this case were engaged in an "independently established trade, occupation, profession or business." TESI satisfied the three pronged test set forth in § 288.034.5. Thus, prior to July 1, 1989 (the effective date of the change in the law), registered representatives selling securities for TESI were not "employees" but were "independent contractors" for purposes of § 288.034.5, RSMo 1986.

### Law After June 30, 1989

In Point II, TESI claims that the Commission erred in finding that subsequent to June 30, 1989, the registered representatives had performed services for "wages" in TESI's "employment" because the evidence was insufficient to support the Commission's findings.

Section 288.034.5 was amended, effective July 1, 1989, to read:

Service performed by an individual for remuneration shall be deemed to be employment subject to this law unless it is shown to the satisfaction of the division that such services were performed by an

independent contractor. In determining the existence of the independent contractor relationship, the common law of agency right to control shall be applied. The common law of agency right to control test shall include but not be limited to: If the alleged employer retains the right to control the manner and means by which the results are to be accomplished, the individual who performs the service is an employee. If only the results are controlled, the individual performing the service is an independent contractor.

The director of the Division has promulgated regulations, 8 C.S.R. 10–4.150(1), to properly administer this statute, which provide in pertinent part:

In order to interpret Section 288.034.5, RSMo (Supp.1989), effective June 30, 1989, the Division shall apply the common law rules applicable in determining the employer-employee relationship under 26 USC Section 3306(i). In applying the provisions of 26 USC Section 3306(i), the Division shall consider the case law, Internal Revenue Regulations and Internal Revenue Service Letter Rulings interpreting and applying that subsection.

Section 3306(i) of Chapter 26 of the United States code defines "employee" generally as an individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of employee. In considering federal common law, we look first to the decisions of the United States Supreme Court. The Supreme Court set forth the following relevant factors to be considered in examining whether an individual is an employee under the general common law of agency in *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 751–52, 109 S.Ct. 2166, 2178–79, 104 L.Ed.2d 811 (1989):

[T]he skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of

the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and tax treatment of the hired party.

Thus, it seems that the Division is seeking to avoid the confusion which would be caused by having several different tests of employment status. In other words, it seems a business should be able to receive consistent treatment from both the Internal Revenue Service and the Division of Employment Security as to its agents and workers. Therefore, we conclude that in construing the Missouri employment security law we should be guided by generally recognized common law concepts, including those set forth in decisions of the federal courts, and that we should not restrict ourselves to the decisions of Missouri Courts.

■ The Supreme Court listed twelve factors in *Reid* in determining the status.[1] The Court also stated that, in making such a determination, it has traditionally looked to the *Restatement (Second) of Agency* for guidance. *Id.*, n. 31. Section 220(2) contains a non-exhaustive list of factors relevant to determine whether an individual is an employee: 1) the extent of control over the details of the work; 2) whether the work in question is a distinct occupation or business; 3) whether the work is usually done under the direction of the employer or by a specialist without supervision; 4) the skill required; 5) whether the employer supplies the tools and place of work; 6) length of time for which the person is employed; 7) method of payment, whether by time or by the job; 8) whether the work is part of the regular business of the employer; 9) whether the parties believe they are creating the relation of master and servant; and 10) whether the

principal is or is not in business. Restatement (Second) of Agency § 220(2) (1958). No single factor is determinative. *Edward Lowe Indus., Inc. v. Missouri Div. of Employment Sec.*, 865 S.W.2d 855, 857 (Mo.App. 1993). The Internal Revenue Service, in an attempt to capture the key elements of general common law of employment relationship, has set forth 20 factors in Ruling 87–41 to be considered in determining whether a particular worker is an employee or an independent contractor. *See Veterans Servs., Inc. v. Labor & Indus. Relations Comm'n,* 861 S.W.2d 781, 786–90 (Mo.App.1993). Although the federal common law involves using different factors in the analysis, the bedrock of the law is still the "common law of agency right to control," § 288.034.5. Consequently, the decision to apply the general common law did not represent a radical departure in philosophy, and in most cases the result of analysis will be the same because we are still looking primarily for indicia of the right of control. The Division has chosen to focus primarily on the 20 factors designated by the IRS. Therefore, we will also review the 20 factors in order.

1. INSTRUCTIONS. A worker who is required to comply with other persons' instructions about when, where, and how he or she is to work is ordinarily an employee. This control factor is present if the person or persons for whom the services are performed have the RIGHT to require compliance with instructions.

The evidence presented in this case shows that TESI exerted no control over the "when, where and how" of the appointments, sales contacts, solicitation of business, territory or hours worked. The Division argues that the procedural manuals TESI supplied to the registered representatives indicated control in this area, but the Division fails to articulate any specific item of control reflected in the manuals beyond governmental regulations imposed by the NASD, the SEC or state law.

---

1. One of the factors mentioned in *Reid* is the tax treatment of the hired party. We find it interesting that the Division does not mention how TESI's agents are treated for tax purposes. While either side could argue that the current tax treatment does not accurately reflect the law, in our view it would not be irrelevant to consider the current tax treatment of the agency relationship.

2. TRAINING. Training a worker by requiring an experienced employee to work with the worker, by corresponding with the worker, by requiring the worker to attend meetings, or by using other methods, indicates that the person or persons for whom the services are performed want the services performed in a particular method or manner.

The evidence revealed that TESI administered no formal training for the registered representatives. The manuals have not been shown to be anything more than a compilation of the regulations for selling securities imposed by law.

3. INTEGRATION. Integration of the worker's services into the business operations generally shows that the worker is subject to direction and control. When the success or continuation of a business depends to an appreciable degree upon the performance of certain services, the workers who perform those services must necessarily be subject to a certain amount of control by the owner of the business.

The continuation of TESI's business depends on the performance of the representatives in selling securities. However, the representatives are not integrated into the general business operations of TESI. TESI does not depend on them for anything it could not depend on an independent broker to do.

4. SERVICES RENDERED PERSONALLY. If the Services must be rendered personally, presumably the person or persons for whom the services are performed are interested in the methods used to accomplish the work as well as in the results.

The registered representatives must personally provide their services in order to sell securities for TESI. They may not contract it out to unregistered personnel.

5. HIRING, SUPERVISING, AND PAYING ASSISTANTS. If the person or persons for whom the services are performed for, supervise, and pay assistants, that factor generally shows control over the workers on the job. However, if one worker hires, supervises, and pays the other assistants pursuant to a contract under which the worker agrees to provide materials and labor and under which the worker is responsible only for the attainment of a result, this factor indicates an independent contractor status.

TESI does not provide a clerical support staff for the registered representatives. The representatives may engage their own assistants at their own expense.

6. CONTINUING RELATIONSHIP. A continuing relationship between the worker and the person or persons for whom the services are performed indicates that an employer-employee relationship exists. A continuing relationship may exist where work is performed at frequently recurring although irregular intervals.

The relationship between TESI and the registered representatives was envisioned between the parties as a continuous and ongoing relationship.

7. SET HOURS OF WORK. The establishment of set hours of work by the person or persons for whom the services are performed is a factor indicating control.

TESI did not set the hours the registered representatives worked. The representatives set their own hours.

8. FULL TIME REQUIRED. If the worker must devote substantially full time to the business of the person or persons for whom the services are performed, such person or persons have control over the amount of time the worker spends working and impliedly restrict the worker from doing other gainful work. An independent contractor on the other hand, is free to work when and for whom he or she chooses.

Each registered representative was already serving as an insurance agent, which is his or her full-time occupation. The securi-

ties sales are incidental. The average annual income earned by the representatives for selling securities was approximately $3,000.00. None of the representatives sold securities on a full-time basis.

9. DOING WORK ON EMPLOYER'S PREMISES. If the work is performed on the premises of the person or persons for whom the services are performed, that factor suggests control over the worker, especially if the work could be done elsewhere. Work done off the premises of the person or persons receiving the services, such as at the office of the worker, indicates some freedom from control. However, this fact by itself does not mean that the worker is not an employee. The importance of this factor depends on the nature of the service involved and the extent to which an employer generally would require that employees perform such services on the employer's premises. Control over the place of work is indicated when the person or persons for whom the services are performed have the right to compel the worker to travel a designated route, to canvass a territory within a certain time, or to work at specific places as required.

The registered representatives did not perform any services on TESI's premises. The Division points out that no trade is considered accepted by TESI until it is turned in by the registered representative at TESI's home office in Connecticut. This is not what is meant by the concept of "doing work on employer's premises."

10. ORDER OR SEQUENCE SET. If a worker must perform services in the order or sequence set by the person or persons for whom the services are performed, that factor shows that the worker is not free to follow the worker's own pattern of work but must follow the established routines and schedules of the person or persons for whom the services are performed. Often, because of the nature of an occupation, the person or persons for whom the services are performed do not set the order of the services or set the order infrequently. It is sufficient to show

control, however, if such person or persons retain the right to do so.

The registered representatives set their own schedules. Each representative develops his or her own sales approach. After a sale, the procedure followed by the representatives was dictated by federal and state regulations.

11. ORAL OR WRITTEN REPORTS. A requirement that the worker submit regular or written reports to the person or persons for whom the services are performed indicates a degree of control.

There is no evidence that TESI required the registered representatives to produce any written reports. The submission of transaction paperwork and accounting information after a sale is not the kind of "report" contemplated in this factor.

12. PAYMENT BY HOUR, WEEK, MONTH. Payment by the hour, week, or month generally points to an employer-employee relationship, provided that this method of payment is not just a convenient way of paying a lump sum agreed upon as the cost of a job. Payment made by the job or on a straight commission generally indicates that the worker is an independent contractor.

The registered representatives were paid a straight commission for their services based solely on their sales. The fact that the commission checks are paid weekly is immaterial.

13. PAYMENT OF BUSINESS AND/OR TRAVELING EXPENSES. If the person or persons for whom the services are performed ordinarily pay the worker's business and/or traveling expenses, the worker is ordinarily an employee. An employer, to be able to control expenses, generally retains the right to regulate and direct the worker's business activities.

The registered representatives pay their own business expenses, such as mileage to appointments. There was evidence that, at high production levels, the representative's

license fee was paid by TESI. It appeared that this was really in the nature of a bonus, that is, an additional reward for higher production.

14. FURNISHING OF TOOLS AND MATERIALS. The fact that the persons or persons for whom the services are performed furnish significant tools, materials, and other equipment tends to show the existence of an employer-employee relationship.

TESI provides forms, envelopes and prospectuses to the representatives. There was no evidence that the representatives developed or paid for their own forms and materials. There was no evidence that this was unusual or different from normal industry practice.

15. SIGNIFICANT INVESTMENT. If the worker invests in facilities that are used by the worker in performing services and are not typically maintained by employees (such as the maintenance of an office rented at fair market value from an unrelated party), that factor tends to indicate that the worker is an independent contractor. On the other hand, lack of investment in facilities indicates dependence on the person or persons for whom the services are performed for such facilities and, accordingly, the existence of an employer-employee relationship. Special scrutiny is required with respect to certain types of facilities, such as home offices.

The representatives either work out of their insurance offices, or their homes. There was no evidence that the workers had to invest in office or equipment.

16. REALIZATION OF PROFIT OR LOSS. A worker who can realize a profit or suffer a loss as a result of the worker's services (in addition to the profit or loss ordinarily realized by employees) is generally an independent contractor, but the worker who cannot is an employee. For example, if the worker is subject to a real risk of economic loss due to significant investments or a bona fide liability for expenses, such as salary payments to unre-

lated employees, that factor indicates that the worker is an independent contractor. The risk that a worker will not receive payment for his or her services, however, is common to both independent contractors and employees and thus does not constitute a sufficient economic risk to support treatment as an independent contractor.

There was no evidence that these representatives were subject to a real risk of a substantial economic loss as a result of undertaking to sell the securities.

17. WORKING FOR MORE THAN ONE FIRM AT A TIME. If a worker performs more than de minimis services for multiple or unrelated persons or firms at the same time, that factor generally indicates that the worker is an independent contractor. However, a worker who performs services for more than one person may be an employee of each of the persons, especially where such persons are part of the same service arrangement.

Each representative was engaged in marketing insurance as a primary occupation. The representatives could register with, and sell securities for, other brokers and dealers with TESI's permission. There was testimony that some representatives sold securities for other brokers or dealers while selling for TESI. There was no evidence that any representative had been denied permission.

18. MAKING SERVICE AVAILABLE TO GENERAL PUBLIC. The fact that a worker makes his or her services available to the general public on a regular and consistent basis indicates an independent contractor relationship.

The sales representatives were entitled to represent other securities brokers, although most represented only TESI because they undertook securities sales on a very limited basis. The fact that no dual representation of brokers was permitted without TESI's approval was not shown to be a significant factor since there was no evidence TESI had ever withheld permission for dual representation.

19. RIGHT TO DISCHARGE. The right to discharge a worker is a factor indicating that the worker is an employee and the person possessing the right is an employer. An employer exercises control through the threat of dismissal, which causes the worker to obey the employer's instructions. An independent contractor, on the other hand, cannot be fired so long as the independent contractor produces a result that meets the contract specifications.

TESI can terminate an agent's authority at will, at any time. Like many other sales agency relationships, the agency agreement is not tied to a particular project, nor does it run for a specified period of time.

20. RIGHT TO TERMINATE. If the worker has the right to end his or her relationship with the person for whom the services are performed at any time he or she wishes without incurring liability, that factor indicates an employer-employee relationship.

The representative is entitled to terminate the relationship with TESI at any time without incurring liability.

### Summary

Of the twenty IRS factors considered, the majority are supportive of the proposition that the representatives are independent contractors, while some (factors 4, 6, 15, 16, 19 and 20) are generally supportive of the proposition that they are employees. Of the twelve factors listed by the United States Supreme Court in *Reid*, 490 U.S. at 752, 109 S.Ct. at 2179, the majority support a conclusion of independent contractor status, while four (the duration of the relationship, the right to assign, the regular business of the hiring party, and the fact that the hiring party is in business) are consistent with the status of employment.[2] However, some factors are of greater weight than others, and

the bedrock is still the common law agency test of the right to control the manner and means of performance. *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 752, 109 S.Ct. 2166, 2179, 104 L.Ed.2d 811 (1989)). Therefore, one cannot rest a decision merely on a numerical count of factors. In our view, the factors which are more consistent with an employment relationship (such as the lack of a significant investment of capital by the representative, and the ability of TESI to terminate at any time) are not particularly significant in the context of this industry. The key factors in this case, we think, are: 1) the lack of control by TESI of the when, where and how of the job (other than for governmental regulations); 2) the fact that being a securities agent has been, and continues to be, an independently established occupation for many; 3) the lack of reimbursement for general business expenses such as mileage; 4) the fact that TESI provides no place for the representatives to work, and no clerical support; 5) the fact that the representatives are not forbidden to offer securities, including stocks and bonds, through other brokerages, although most decline to do so for practical reasons; and 6) the fact that this endeavor is part-time and supplemental to the representative's primary endeavor of insurance sales. The record did not support the Division's contentions that TESI controlled, limited, and regulated the activities of the representatives beyond that which is customary and required in the industry as to independent securities representatives. The Division's emphasis on the fact that TESI has paid the licensing fee for some agents is of limited significance because such action is more in the nature of a production bonus than it is an indicator of employment.

The Division has not attempted to argue that the analysis is in any way affected by any relationship between TESI and Travelers Insurance Company.[3] We conclude that there are relatively few factors of any sub-

---

2. Two of the factors mentioned by the Supreme Court in *Reid* (the provision of employee benefits, and the tax treatment of the hired party) have not been discussed by either party.

3. The Division has analyzed the case as though Travelers Insurance Company has nothing to do with the relationship of TESI to its agents. The record does not reveal how the relationship be-

stance tending to show anything other than independent contractor status. In our view, the relationship between TESI and its sales representatives is not typical of an employer-employee relationship. We hold that there simply were no substantial factors, under any of the applicable analyses, requiring the categorization of TESI's relationship with its representatives as an employment relationship. Therefore, the decision was not supported by competent and substantial evidence. Also, the decision of the Commission that the services performed by the registered representatives were performed as employees within § 288.034.5, RSMo 1994 was against the overwhelming weight of the evidence. The Commission erred in ruling that the agents were employees.

### Conclusion

The sales representatives selling securities for TESI were not employees under previous law, prior to June 30, 1989, or under current law. The Commission's decision is reversed. TESI's additional points are not addressed because they are moot.

All concur.

tween Travelers Insurance Company and its agents is treated for purposes of the employment security law or for tax purposes. As for insurance agents generally, see 26 USC § 3121(d)(3)(B). See Also 37 ALR Fed 95, § 29; 39 ALR 3d 872.