**DEPARTMENT OF NATURAL RESOURCES–PARKS AND RECREATION, Appellant,**

v.

**John LOSSOS and Division of Employment Security, Respondents.**

No. 21627.

Missouri Court of Appeals, Southern District, Division One.

Jan. 23, 1998.

sion held that John Lossos ("Claimant") was entitled to unemployment benefits because he did not voluntarily leave his job, but rather was discharged because of a lack of work. Respondent Division of Employment Security (the "DES") is a party to this appeal pursuant to § 288.210.[1] Claimant did not file a brief.

Claimant worked for the DNR for more than twelve years as a park maintenance worker ("PMW"). In October 1995, while working at Lake Wappapello State Park near Williamsville, Missouri, he was promoted from PMW II to PMW III. The DNR placed him on promotional probation for six months, and informed him that his failure to complete the probationary period successfully would result in his return to PMW II status. In March 1996, the DNR extended Claimant's probation for an additional six months, to October 1, 1996. On September 5, 1996, the DNR notified him that he had not successfully completed his probation, and that he would return to his previous status as a PMW II. It also directed him to report for work at Babler State Park, near St. Louis, on September 9, 1996. Claimant could not continue to work at Lake Wappapello because the PMW II position he had previously occupied had been filled while he was on probation as a PMW III. The DNR designated the Babler assignment as temporary, but informed Claimant that it would become permanent in thirty days if no other employment opportunities became available.

Babler State Park is more than 150 miles away from Claimant's home. Although the DNR offered to reimburse him for his travel expenses, Claimant tendered his resignation on September 30, 1996. In his letter of resignation, he said that he was resigning pending his appeal of the transfer, and requested early retirement benefits "pending reinstatement." He also stated in the letter that he could not afford to lose his health insurance, and to retire was the only way he could continue to be covered.

Claimant filed a request for unemployment benefits on October 18, 1996. A DES deputy determined that he was entitled to benefits

Jeremiah W. (Jay) Nixon, Atty. Gen., Timothy P. Duggan, Asst. Atty. Gen., Jefferson City, for Appellant.

Cynthia Quetsch, Jefferson City, for Respondent.

GARRISON, Presiding Judge.

The Missouri Department of Natural Resources (the "DNR") appeals from a decision of the Labor and Industrial Relations Commission (the "Commission"). The Commis-

1. Statutory references are to RSMo Supp.1996, unless otherwise indicated.

because he "quit with good cause attributable to his work or employer." The DNR appealed the award to the DES Appeals Tribunal, which found that Claimant's work for the DNR ended on September 30, 1996 because of a "lack of work." The Appeals Tribunal found that "[w]hen an employer is unable to provide an employee with work at the location where he had been working, he has been discharged due to a lack of work ..." It also noted the distance Claimant would have had to travel from his home to Babler State Park, and concluded that an "employee's failure or refusal to move to some distant location to work for the employer does not cause his separation to be a voluntary leaving." The DNR then appealed to the Commission, which affirmed and adopted as its own the decision of the Appeals Tribunal. The DNR now appeals the Commission's decision. We affirm.

██ When reviewing a decision of the Commission, we may not substitute our judgment on factual matters for that of the Commission. *Travelers Equities Sales, Inc. v. Div. of Emp. Sec.*, 927 S.W.2d 912, 916–17 (Mo.App. W.D.1996). In our review, we first examine the whole record, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award, to determine whether sufficient and competent evidence supports the award. *Id.* at 917. If this is so, we then determine whether the award is against the overwhelming weight of the evidence. *Id.* If the Commission's findings of fact are supported by competent and substantial evidence and without fraud, they shall be conclusive. *Id.* The Commission's conclusions of law, however, do not bind this court, but instead fall within our province of independent review and correction. *Id.*

In its single point on appeal, the DNR contends that Commission erred in granting Claimant unemployment benefits on a finding that he was discharged because "the record shows that [he] retired,[2] rather than transfer

to a new location; and [that] his objection to the travel distance [between his home and Babler State Park] was not good cause to quit as a matter of law ... " It urges us to conclude that Claimant voluntarily left his job without good cause attributable to the work or his employer, and to reverse the Commission.

██ An employee effectively disqualifies himself from receiving unemployment benefits if he leaves work voluntarily without good cause attributable to his work or his employer. § 288.050.1(1). Whether an employee has good cause to quit his job is a question of law, and the burden is on the employee to prove its existence. *Mitchell v. Div. Emp. Sec.*, 922 S.W.2d 425, 427–28 (Mo. App. S.D.1996); *Tin Man Enterprises, Inc. v. Labor & Indus. Relations Comm'n.*, 866 S.W.2d 147, 149 (Mo.App. E.D.1993). The phrase "good cause" has no precise meaning; it depends on the facts of each case. *Sokol v. Labor & Indus. Relations Comm'n.*, 946 S.W.2d 20, 26 (Mo.App. W.D.1997). An employee has good cause to quit his employment if his conduct is consistent with what a reasonable person acting in good faith would do in a similar situation. *Heavy Duty Trux v. Labor & Indus. Relations Comm'n.*, 880 S.W.2d 637, 641 (Mo.App. W.D.1994). The circumstances motivating an employee to quit must be caused by external pressures so compelling that a reasonably prudent person would be justified in terminating his employment. *Sokol*, 946 S.W.2d at 26. Good faith is an essential element of good cause, and to establish it the employee must prove that he made an effort to resolve the troublesome situation before terminating his job. *Mitchell*, 922 S.W.2d at 429; *Heavy Duty Trux*, 880 S.W.2d. at 641; *Tin Man*, 866 S.W.2d at 149.

██ The DNR asserts that Claimant lacked good cause to quit his job because it offered to pay his travel expenses during the thirty days that the assignment was to be temporary.[3] It compares the facts in this

2. The Commission concluded that the "availability of retirement benefits when the work ended for this claimant does not cause his separation from work to have been a voluntary leaving." The DNR does not attack this conclusion in its

briefs, but instead uses the terms "quit" and "retire" interchangeably. Accordingly, we do not address this issue in our review.

3. The record does not reveal what the DNR intended to pay as "travel expenses." In partic-

case to those in *Mitchell*, 922 S.W.2d 425. In that case, the employee's job was terminated about six months before his intended retirement date. The employee requested that he be allowed to work until that time, and the employer arranged for him to work at its facility in another city. This assignment necessitated a 75-mile round trip from the employee's home to his new workplace. The employer provided the employee a monthly stipend for his travel expenses, and allowed him to work fewer hours, while still paying him for a full day's work. The employee, however, quit after several days in the new position. He was earning $ .25 per hour more than the federal minimum wage at that time, and argued that it was not economically feasible for him to continue because his transportation costs caused his pay to fall below the minimum wage, even after allowing for the employer's payment of his travel expenses and travel time. This court held that the employee lacked good cause to quit, not only because he failed to prove his contention, but also because he had understood and accepted the conditions of the new assignment. *Id.* at 427–29.

The circumstances in *Mitchell* and the instant case differ significantly. The employee in *Mitchell* had agreed to drive 75 miles each day to get to and from work. Claimant did not agree, but was directed to drive four times that distance to and from his new assignment. The employer in *Mitchell* attempted to accommodate the employee by paying him for both his travel expenses and most of his travel time, as well as shortening his actual working hours to compensate for time spent in transit. The DNR made a nebulous offer to pay Claimant's travel expenses, but apparently did not offer to adjust his workday to allow him to make what the parties estimate to be a two and one-half to three hour journey each way.

The DNR also argues that Claimant made no attempt to resolve his problems with DNR concerning the transfer to Babler. In support, it cites this court's reference in *Mitchell* to a requirement that, in order to establish good cause, an employee must

prove that he made an effort to resolve the matter with the employer before terminating the job. 922 S.W.2d at 429. Here, however, there was evidence that Claimant spoke with a DNR representative about the transfer and also made an effort to be reinstated to his former position at Lake Wappapello. Claimant's actions in discussing the situation and attempting to be reinstated could be considered as an attempt to resolve the situation, consistent with good faith. *See Heavy Duty Trux*, 880 S.W.2d at 643–44. We likewise conclude that Claimant had good cause to quit his job. *Id.*

Finally, the DNR contends that even if we conclude that Claimant did have good cause to quit, we may not affirm the Commission on that basis, because to do so would entail our making "original findings of fact . . . not found by the Commission." Instead, it asserts, we may only determine whether the Commission's finding that Claimant was discharged for "lack of work" was erroneous, and must reverse and remand if we so find.

In *Travelers*, 927 S.W.2d at 917, the court noted that the grounds for granting relief on appellate review under the Missouri Employment Security Law, § 288.210, are the same as those under the Missouri Workers' Compensation Law, § 287.495, RSMo 1994. It then quoted from *Davis v. Research Medical Center*, 903 S.W.2d 557, 571 (Mo.App. W.D. 1995), a workers' compensation case:

Findings and awards of the Commission which are clearly the interpretation or application of the law, as distinguished from a determination of facts, are not binding on the court and fall within the court's province of independent review and correction where erroneous. And, where the findings of ultimate fact are reached not by a process of natural reasoning from the facts alone, but rather by application of law, it is a conclusion of law and subject to reversal by the court.

*Travelers*, 927 S.W.2d at 917.

In *Sokol*, the dissent made a similar argument to that of the DNR in the instant case, characterizing the Commission's determina-

---

ular, there is no indication that those "travel expenses" would include overnight lodging in

addition to compensation for the 300 miles each day claimant would have had to drive.

tion that an employee had voluntarily quit his job as a finding of fact, rather than a conclusion of law. 946 S.W.2d at 29 (Lowenstein, J., dissenting). The majority rejected this reasoning, holding as a matter of law that, based on the facts found by the Commission, the employee had not voluntarily quit but had been discharged. *Id.* at 26, n. 6.

In the instant case it is true that the Commission found that Claimant was discharged for lack of work, but it also found that his failure to comply with the transfer to a remote job site was not a voluntary leaving. The essential facts of this case, however, are not in dispute. The parties disagree merely as to what legal conclusions may be drawn from them, and in particular whether claimant had good cause to quit within the meaning of § 288.050.1(1). The applicability of a statute to a particular set of facts is a question of law. *Laclede Gas Co. v. Labor & Indus. Relations Comm'n.,* 657 S.W.2d 644, 649 (Mo.App. E.D.1983). Here, the issue involves an interpretation or application of law, which is in our province of independent review and correction where erroneous. *Travelers,* 927 S.W.2d at 917. The Commission's conclusion that Claimant was discharged for lack of work resulted from its attempt to apply the law to the undisputed facts. Even if the Commission reached an incorrect legal conclusion in finding that Claimant was discharged because of a lack of work, we need not reverse and remand this case. Instead, we are permitted to apply the law to the undisputed facts. Accordingly, we hold that Claimant had good cause to resign, and we affirm the decision of the Commission.

PREWITT and CROW, JJ.,concur.