Donald J. BOOTH, Employee–
Respondent,

v.

TRAILINER CORPORATION,
Employer–Appellant,

and

Liberty Mutual Fire Insurance
Company, Insurer–
Appellant.

No. 23138.

Missouri Court of Appeals,
Southern District,
Division Two.

May 30, 2000.

Raymond E. Whiteaker, Whiteaker & Wilson, P.C., Springfield, for Employer–Appellant and Insurer–Appellant.

Patrick J. Platter, Daniel, Clampett, Powell & Cunningham, L.L.C., Springfield, for Employee–Respondent.

Before MONTGOMERY, P.J., GARRISON, C.J., and BARNEY, J.

PER CURIAM.

The issue in this workers' compensation case is whether Donald J. Booth ("Booth") was an employee of Trailiner Corp. ("Trailiner") at the time he sustained an injury, or whether he was an "owner/operator" exempt from coverage under the workers' compensation law by reason of § 287.020.1.[1, 2] The Labor and Industrial Relations Commission ("Commission") held that Booth was an employee of Trailiner, and that he did not come under the "owner/operator" exemption. Trailiner appeals.

 In reviewing a workers' compensation award, we review the findings of the Commission and not those of the Administrative Law Judge ("ALJ"). *Gordon v. Tri–State Motor Transit Co.*, 908 S.W.2d 849, 852 (Mo.App. S.D.1995). In this case, the Commission issued a separate opinion, but also attached and incorporated the ALJ's award and decision. We, therefore, consider the findings and conclusions of the Commission as including the ALJ's award. *Kaderly v. Race Bros. Farm Supply*, 993 S.W.2d 512, 514 (Mo.App. S.D. 1999). Findings and awards of the Commission which are clearly the interpretation or application of the law, as distinguished from a determination of facts, are not binding on the court and fall within the court's province of independent review and correction where erroneous. *Leslie v. School Servs. and Leasing*, 947 S.W.2d 97, 99 (Mo.App. W.D.1997). A finding that a workers' compensation claimant is or is not an "employee" represents such an application of law. *Watkins v. Bi–State Dev. Agency*, 924 S.W.2d 18, 21 (Mo.App. E.D. 1996).

Booth worked as a truck driver in 1989 for a company named GCF, which was described in the evidence as a trucking company leased to Trailiner. He worked for GCF driving one of its trucks and pulling a trailer that belonged to Trailiner. After about a year, Booth purchased his own 1996 Peterbilt tractor, employed two drivers, and entered into what he described as an "owner/operator" agreement with Trailiner. After entering into the arrangement, Booth drove trucks owned by Trailiner as well as the one owned by himself. If the drivers working for Booth wanted to drive more, they would drive his truck and he would "take a Trailiner truck if they needed [him] ." He also said that he would drive a Trailiner tractor "[w]henever [his] tractor wasn't busy and [he] wanted the extra work, or if your tractor broke down, they would loan you one."

On March 17, 1996, Booth was injured while "getting out of [his] truck" when he stepped on a bottle. One of the two drivers who worked for Booth was with him at the time and did part of the driving to return to Missouri.

---

1. All references to statutes are to RSMo 1994 unless otherwise indicated.

2. Section 287.020.1 defines an "employee" for the purposes of workers' compensation. It provides, inter alia:

 The word "employee" as used in this chapter shall be construed to mean every person in the service of any employer, as defined in this chapter, under any contract of hire, express or implied, oral or written, or under any appointment or election, including executive officers of corporations .... The word "employee" shall not include an individual who is the owner and operator of a motor vehicle which is leased or contracted with a driver to a for-hire common or contract motor vehicle carrier operating within a commercial zone as defined in section 390.020 or 390.041, RSMo, or operating under a certificate issued by the transportation division of the department of economic development or by the interstate commerce commission.

The Commission concluded that Booth was an employee of Trailiner. It said that drivers in the service of contract carriers have been held to be employees in such circumstances, citing *Miller v. Hirschbach Motor Lines, Inc.,* 714 S.W.2d 652 (Mo. App. S.D.1986); *Glenn v. Stoneload Delivery Co.,* 894 S.W.2d 713 (Mo.App. W.D. 1995); *Ceradsky v. Mid–America Dairymen, Inc.,* 583 S.W.2d 193 (Mo.App. W.D. 1979). Those cases, however, were decided under an earlier version of § 287.020.1 that *did not* contain the "owner/operator" exception.

The Commission also found that Booth was not exempt from the workers' compensation law as an "owner/operator", saying that Trailiner presented no evidence of any "owner/operator agreement,"[3] that any of the parties were issued a certificate by the Interstate Commerce Commission ("ICC"), or that Trailiner operated within a commercial zone within or close to the confines of a single municipality. It said that "[b]ased upon the testimony of Booth, the items from his personnel file which were admitted into evidence, the absence of any purported agreements between Booth and Trailiner, and [the Code of Federal Regulations requiring certain "owner/operator" agreements to be in writing], it cannot be concluded that Booth and Trailiner entered into an agreement which the exemption contemplates." It also noted that the circumstances of Booth's work with Trailiner did not change after he purchased his own tractor in that he was still subject to its safety regulations, he attended its safety meetings, he underwent drug testing paid for by Trailiner, and he went to a doctor selected by Trailiner for work-related injuries.

■■■ In its first point on appeal, Trailiner contends that the Commission erred in finding that the "owner/operator exemption" under § 287.020.1 did not apply and that Booth was an employee "because the

Commission failed to properly apply Section 287.020.1, in that it read into the statute a requirement that the owner/operator agreement must be written, that it must be shown that there is not control exerted over the claimant, and that the 'relative nature of the work' test must be overcome for the exemption to apply."

Trailiner argues that the Commission incorrectly interpreted the law when it concluded:

> We think the above-cited statute suggests a written owner/operator lease agreement. This is consistent with federal motor carrier regulations requiring certain (interstate) owner/operator leasing agreements to be in writing. See 49 C.F.R. 376.11 et seq. (See also 4 CSR 265–10.040 for intrastate leasing agreements) Employer introduced no evidence, written or otherwise, of an agreement. The only evidence of an agreement was Mr. Booth's answer "Yes, I did" when asked if he entered into an owner/operator agreement with Trailiner after he purchased a truck. We have no way to know if Mr. Booth referred to an owner/operator agreement pursuant § 287.210.1 RSMo. We will not speculate as to its terms. This case demonstrates how important it is to place the agreement into evidence. We are not prepared to say the lack of a written agreement, which meets the conditions of § 287.210.1 RSMo will always be fatal to proving the owner/operator exemption. We do believe the absence of an agreement places employer in a challenging evidentiary posture.

Part of Trailiner's point is based on the conclusion that the Commission "read into the statute a requirement that the owner/operator agreement must be written." While we agree with Trailiner that § 287.020.1 does not, by its terms, require such a lease or contract to be in writing,

---

**3.** Neither party introduced a written agreement between Booth and Trailiner at the hearing before the ALJ.

we are not persuaded that the Commission's findings quoted above indicate such an interpretation. It said that § 287.020.1 "suggests" a written agreement, but it specifically said that it was not prepared to say that the lack of a written agreement would always be fatal. As will be indicated infra, we interpret the Commission's ruling as being based on the lack of what it considered sufficient evidence of the contents of an agreement. The portion of Trailiner's point premised on the conclusion that the Commission interpreted § 287.020.1 as requiring a written agreement is not well taken.

Trailiner also contends that the Commission improperly "read into the statute" a requirement that it must be shown that "there is not control exerted over the claimant, and that the 'relative nature of the work' test must be overcome for the exemption to apply." Its argument concerning this portion of the point is, in part:

> ... the Commission's holding that the owner/operator exemption does not apply in this case is a misapplication of the law because the Commission infers that, for the exemption to apply, there must be evidence that the claimant 'was engaged in a separate business sufficient to believe that he paid for all business expenses and would be sufficiently funded to pay for risks of loss such as work related injuries.' This would require, in essence, evidence regarding the control exerted by Trailiner over Booth and the relative nature of the work. Nowhere in Section 287.020.1, RSMo, is such a requirement set forth in the context of the owner/operator exemption. Nowhere in the workers' compensation regulations is such a requirement set forth.

Trailiner bases this argument on the findings of the Commission. The Commission said that "[e]mployer introduced no evidence, written or otherwise, of an agreement" other than Booth's statement that "Yes [he] did" when asked if he had entered into an "owner/operator" agreement. It also noted, however, that "[w]hile the scope of the agreement or agreements between Booth and Trailiner are not clear," the Code of Federal Regulations requires that certain "owner/operator" agreements must be in writing, and indicate the terms which must be included in "the lease" such as a requirement that the "lease" clearly specify the legal obligation of the authorized carrier to maintain insurance coverage for the protection of the public, and specify who is responsible for providing any other insurance coverage for the operation of the "leased" equipment. The Commission also said:

> Based upon the testimony of Booth, the items from his personnel file which were admitted into evidence, the absence of any purported agreements between Booth and Trailiner, and the regulations noted above, it cannot be concluded that Booth and Trailiner entered into an agreement which the exemption contemplates. The circumstances and customs of Booth's work with Trailiner did not change after he purchased the 1996 Peterbilt. He was still subject to safety regulations of the company, attended safety meetings, underwent drug testing for which Trailiner and not Booth paid for, and went to a physician selected by Trailiner for work-related injuries, among other things. The workers' compensation law must be construed with a view towards the public welfare. § 287.800 RSMo.1994. It cannot be concluded, on the basis of this evidence, that Booth was engaged in a separate business sufficient to believe that he paid for all business expenses and would be sufficiently funded to pay for risks of loss such as work-related injuries. As a result, the argument of Trailiner that this exemption applies in this particular case to Booth must fail.

As we understand the Commission's findings, it interpreted § 287.020.1 as requiring that an "owner/operator" agreement contain terms "which the exemption contemplates," and which are consistent with those specified in the Code of Federal

Regulations. Trailiner concludes that such an interpretation "would require, in essence, evidence regarding the control exerted by Trailiner over Booth and the relative nature of the work." We agree that such an interpretation of the statute is erroneous.

Section 287.020.1, by its terms, merely excludes from the definition of employee an individual: (1) who is the owner and operator of a motor vehicle which is (2) leased or contracted with a driver (3) to a for-hire common or contract motor vehicle carrier operating within a commercial zone as defined in §§ 390.020 or 390.041, or under a certificate issued by the Transportation Division of the Department of Economic Development or by the ICC. It does not require compliance with any regulations found in the Code of Federal Regulations or the Code of State Regulations. Likewise, it does not require that the lease or contract specify the obligation of the carrier to maintain insurance coverage, or provide who is responsible for the operation of the leased equipment. It does not require a showing that Booth was "engaged in a separate business sufficient to believe that he paid for all business expenses and would be sufficiently funded to pay for risks of loss such as work-related injuries," as referred to by the Commission in its finding. Finally, it does not, by its terms, depend on the issue of control or relative nature of the work which were tests applied in earlier cases decided before the "owner/operator" exception to the definition of "employee" was added to § 287.020.1. *See Miller, Glenn,* and *Ceradsky.* In short, § 287.020.1 does not contain the requirements apparently imposed by the Commission.

■ The absence of such requirements in the plain language of the statute is significant. *Simpson v. Dale E. Saunchegrow Const.,* 965 S.W.2d 899, 904 (Mo.App. S.D.1998). The legislature could have easily included language mandating minimum requirements for such a lease or contract but did not do so. Its failure to do so

leads us to the conclusion that the requirements imposed by the Commission were never intended by the legislature. *Id.* When statutory language is clear, courts must give effect to the language as written. *Emery v. Wal–Mart Stores, Inc.,* 976 S.W.2d 439, 449 (Mo. banc 1998).

We interpret the Commission's findings as being based on what it perceived as the lack of sufficient evidence to satisfy the requirements of a lease or contract which it superimposed on the statutory provisions. The Commission misapplied the law to the extent that it held that under § 287.020.1 such leases or contracts must meet requirements found in the Code of Federal Regulations concerning their contents, that they demonstrate a separate business sufficient to believe that the "owner/operator" paid for all business expenses and would be sufficiently funded to pay for risks of loss such as work-related injuries, or depend on the level of control or relative nature of the work. Any such requirement must come from the legislature and not be imposed by judicial interpretation. For the reasons stated, Trailiner's first point is well taken.

■ In its second point on appeal, Trailiner contends that the Commission's award holding that Booth was an employee rather than exempt from the provisions of the workers' compensation law by reason of § 287.020.1 was erroneous because the facts found by the Commission do no support the award and there is insufficient, competent evidence to warrant making the award. It argues that the Commission found that Booth agreed that he entered into an "owner/operator" agreement, and that other evidence also indicates the existence of such an agreement. We agree.

The Commission found that Booth admitted that he had entered into an "owner/operator" agreement, but the Commission seemed to conclude that such an agreement must meet the requirements outlined in our discussion of the first point on this appeal. As indicated, those re-

quirements imposed by the Commission are not required by the statute as written. There is, however, other evidence in the record in addition to that referenced by the Commission.

For instance, Booth testified that he entered into an "owner/operator" agreement with Trailiner when he purchased his 1996 Peterbilt tractor; he also entered into an escrow agreement with Trailiner which provided a fund for upkeep on the tractor and required that the Peterbilt be operated full time for Trailiner; he had two drivers who, together with himself, drove his tractor pulling a Trailiner trailer; his Peterbilt tractor was dispatched by the Trailiner office; the drivers who drove Booth's Peterbilt included a man named Grounds; and he got a "percentage of the load" as compensation under the "owner/operator" agreement. He also testified that the Peterbilt tractor was not operated for any other trucking company other than Trailiner, and that it was operated under Trailiner's "ICC numbers." On the day of the accident in question, Booth was getting out of "his truck," when he stepped on a bottle on the ground and sustained injuries. The Commission found that Booth was then operating the tractor that he owned, a conclusion that is not disputed on this appeal. The evidence also demonstrated that the driver named Grounds, whom Booth employed to help drive his Peterbilt, was in the truck with him on the trip when the accident occurred. Exhibits introduced by Booth identified him as "o/ op," "o/o," and "o." Booth, himself, told a doctor to whom his attorney sent him for an evaluation, that he was injured "while working as an owner/operator of a tractor-trailer leased to Trailiner." Finally, Booth explained the "owner/operator" arrangement as one where Trailiner contracts with somebody who owns the tractor or trailer to deliver loads for them, and pays them based on a percentage of the payment for the delivery of the load.

The evidence indicating that there was a lease or contract between Booth and Trail-iner meeting the specific requirements of the "owner/operator" portion of § 287.020.1 is uncontradicted. This evidence leads to the inescapable conclusion that Booth was exempt under the workers' compensation law by reason of the exception to the definition of "employee" found in § 287.020.1.

Our review in a workers' compensation case includes a determination of whether the Commission could have reasonably made its findings and award upon consideration of all of the evidence before it. *Davis v. Research Med. Ctr.*, 903 S.W.2d 557, 571 (Mo.App. W.D.1995). Where, as here, the award results from an erroneous application or interpretation of the law, we are to make an independent review and it is subject to correction and reversal by this court. *Id.* We conclude that those principles require us to reverse the award of the Commission in this case. All of the evidence before the Commission was to the effect that there was a lease or contract between Booth, as owner and operator, and Trailiner concerning Booth's tractor; that the lease or contract concerning the tractor was with a driver; that Booth was operating his tractor at the time of his accident; and that Trailiner was a common or contract motor vehicle carrier operating under a certificate issued by the ICC since Booth's tractor was being used under Trailiner's ICC numbers. This evidence, which was undisputed, brings this relationship squarely within the letter of the last sentence of § 287.020.1, and thus establishes that Booth was, by reason thereof, not an employee under that statute. Accordingly, we reverse the award of the Commission and remand to the Commission for entry of an award consistent with this opinion. Because of this resolution, we do not reach Trailiner's third point on appeal.