Helen Rose KLAUSNER, Appellant,

v.

Janet BROCKMAN and Division
of Employment Security,
Respondents,

Ed Hanus, Appellant,

v.

Burnetta Jones and Division of
Employment Security,
Respondents.

Nos. WD 59236, WD 59237.

Missouri Court of Appeals,
Western District.

Oct. 30, 2001.

Harry Charles, St. Louis, for Appellants.

Larry R. Ruhmann, St. Louis, for Respondent Division of Employment Security.

Before: EDWIN H. SMITH, P.J., and BRECKENRIDGE and HOWARD, JJ.

VICTOR C. HOWARD, Judge.

Helen Klausner and Ed Hanus ("Appellants") appeal from decisions issued against them by the Labor and Industrial Relations Commission ("Commission") on October 5, 2000. They allege that the Commission erred in adopting the July 7, 2000, decisions of the Division of Employment Security's Appeals Tribunal. The Commission found that certain domestic workers performed services for "wages" in "employment" for Appellants as those terms are defined in sections 288.036 and 288.034 RSMo,[1] thereby obligating Appellants as employers to pay unemployment benefits on the workers' behalf. Appellants' cases concern similar facts and the same issues, so they have been consolidated for appeal.

Appellants present three issues for our consideration: (1) whether the twenty-factor test in IRS Revenue Ruling 87–41 remains the appropriate test to determine employment status, (2) whether the workers were excluded from state unemployment tax liabilities as "sitters" under Internal Revenue Code section 3506(b),[2] and (3) whether the Commission erred in ultimately finding that the workers performed services for "wages" in "employment" of Ms. Klausner and Mr. Hanus, as those terms are defined in sections 288.036 and 288.034 RSMo.

We affirm.

## Standard of Review

■■■ Missouri's Employment Security Law, as codified at Chapter 288 RSMo,

1. Unless otherwise noted, all statutory references are to RSMo 2000. The time periods under which "employment" was determined were from 1997 to 1999. There were several statutory amendments during this time, none of which substantively affect our analysis herein. Thus, for simplicity reasons, unless otherwise noted, statutory citations are to RSMo 2000, which incorporates each of the amendments.

2. Citations to the Internal Revenue Code as codified at 26 U.S.C., Subtitle C, "Employment Taxes," sections 3101 through 3509 (1994), are referred to by their Internal Revenue Code (I.R.C. § ——) citation.

governs this case. Section 288.210 RSMo controls our review of the Commission's decisions and states in relevant part that:

The findings of the Commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the Commission on the following grounds and no other:

(1) That the Commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the Commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

Thus, provided the Commission's findings of fact are supported by substantial and competent evidence in the record, those facts are conclusive and binding upon this court. *Morrison v. Labor & Indus. Relations Comm'n*, 23 S.W.3d 902, 906 (Mo. App. W.D.2000). However, we grant no deference to the Commission's conclusions of law and its application of the law to the facts. *Id.* In evaluating Appellants' issues concerning evidence supporting the findings of the Commission, we engage in a two-step process.

"In the first step, the court examines the whole record, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award, to determine if the record contains sufficient competent and substantial evidence to support the award. [I]f not, the Commission's award must be reversed. If there is competent and substantial evidence supporting the award, the court moves to the second

step, where it views the evidence in the light most favorable to the award, but must consider all evidence in the record, including that which opposes or is unfavorable to the award, take account of the overall effect of all of the evidence, and determine whether the award is against the overwhelming weight of the evidence."

*Travelers Equities Sales, Inc. v. Div. of Employment Sec.*, 927 S.W.2d 912, 917 (Mo.App. W.D.1996) (finding applicable to Missouri's Employment Security Law and quoting *Davis v. Research Med. Ctr.*, 903 S.W.2d 557, 571 (Mo.App. W.D.1995), which announced this two-step process as applicable to the Commission's findings under Missouri's Workers Compensation Law).

## Background

A brief background of the facts giving rise to this appeal follows. We will include more facts, where necessary, in our discussion of the issues on appeal.

Appellants Helen Rose Klausner and Ed Hanus, separately and individually, are two elderly individuals who require personal health care services at their homes. Each had trusts established to provide for their care, with Maurice Weingart and William Fletcher as the trustees for Ms. Klausner and William Fletcher as the trustee for Mr. Hanus.

In 1997, Mr. Fletcher approached Burnetta Jones about providing home health care services for Mr. Hanus. At the time, Ms. Jones was a full-time employee of a nursing home, but she agreed to provide the requested services to Mr. Hanus in addition to her work at the nursing home. In 1998, Mr. Fletcher approached Ms. Jones and Janet Brockman, Ms. Jones' coworker at the nursing home, about also providing care to Ms. Klausner at her

home. The women agreed to provide the home care services to Appellants.

Mr. Fletcher, an attorney, wanted the home health care services to be performed by an agency with independent contractors. Thus, in May of 1998, he prepared two essentially identical contracts titled, "Contract with Independent Contractor for Home Care Services," wherein Ms. Jones and Ms. Brockman, doing business as "Loving Home Care Service," contracted with the Klausner trust in one contract and the Hanus trust in the other to provide home health care services to Ms. Klausner and Mr. Hanus. Mr. Fletcher also drafted a fictitious name registration for Ms. Jones and Ms. Brockman to register their "partnership" called "Loving Home Care Service" with the Missouri Secretary of State's office. In addition, Mr. Fletcher prepared a "Contract with Independent Contractor" to be signed by the workers that Ms. Jones and Ms. Brockman were to bring in to assist with their "business." These contracts, which were subsequently signed by the workers who at various times provided services to Mr. Hanus and/or Ms. Klausner,[3] indicated that the workers were deemed independent contractors, not employees, with Brockman and Jones d/b/a Loving Home Care Services. At Mr. Fletcher's direction, Ms. Jones and Ms. Brockman also signed the documents prepared by Mr. Fletcher. The fictitious name registration was filed June 2, 1998. Although they agreed to be called independent contractors, neither Ms. Jones nor Ms. Brockman understood the meaning and consequences of such designation.

In return for their work, the contracts provided that each worker would receive between $8.50 and $10 per hour. Ms. Jones and Ms. Brockman would receive $10 per hour initially, which was later raised to $12 per hour. The women would also split their "supervisory fee." This fee, which was Mr. Fletcher's idea and which he deemed to be the women's "profit," would be the difference between their workers' hourly wage (between $8.50 and $10) and the maximum wage allowed for in the contracts (between $10 and $12). The workers were paid by the hour on a weekly basis from Appellants' trusts. Their trustees, Mr. Weingart and Mr. Fletcher, issued and signed the checks. The contracts between Loving Home Care Services and the trusts purported that this would be a "payroll service" performed by the trusts, but there were no charges for this service. There were no withholdings from the workers' checks, and each worker received an annual IRS Form 1099–Misc reporting the wages he or she received as miscellaneous income for tax purposes. Mr. Fletcher's son prepared these 1099's and billed the trusts for his services.

The Division of Employment Security ("Division") eventually investigated Loving Home Care Service, Ms. Klausner, Mr. Hanus, Ms. Brockman and Ms. Jones to determine who, if anyone, was responsible for unemployment contributions for the workers under the Missouri Employment Security Law. On July 26, 1999, the Division found that Ms. Klausner and Mr. Hanus were liable as employers of the workers for unemployment contributions owed to the Division. Mr. Hanus was assessed liability for contributions due in 1997 and 1998. Ms. Klausner was assessed liability

---

**3.** In addition to Ms. Jones and Ms. Brockman, Chazell Ford, Debra Willis, Mary Morrow, Carolyn Daniels, Jamie Quinn, Dorothy Carter and Lee Dor Jones performed home health care services for Ms. Klausner at various times from March or April 1998 through April 1999. Ms. Brockman was the primary caregiver to Ms. Klausner, and Ms. Jones was the primary caregiver to Mr. Hanus.

for contributions due in 1998 and 1999. Although individual decisions were issued in Ms. Klausner's and Mr. Hanus' cases, it appears that the Division essentially treated the cases as consolidated. The decisions are fundamentally identical, and the same workers were involved.

After the Appeals Tribunal affirmed the Division's referee's findings, Appellants appealed to the Commission. The Commission adopted the Appeals Tribunal's decisions. This appeal followed. As previously stated, we have consolidated the cases for purposes of appeal.

## Point I

In their first point on appeal, Appellants allege that the Commission erred in applying a twenty-factor test in determining that the home health care workers were employees of Appellants rather than independent contractors. Specifically, they allege that IRS Revenue Ruling 87–41, 1987–1 C.B. 296, 298–99 (hereinafter "Rev. Rul. 87–41"), under which the twenty-factor test was developed and which has been consistently used in determining employment status, became obsolete upon the IRS's formulation of a new test. They contend that the twenty-factor test used by the Commission can no longer be used in determining employment status under Missouri's Employment Security Law.

■ Missouri's Employment Security Law has the general purpose of providing for the "compulsory setting aside of unemployment reserves [by an employer] for the benefit of persons unemployed through no fault of their own, and [ ] the Act is to be liberally construed." *Beal v. Indus. Comm'n*, 535 S.W.2d 450, 458 (Mo.App. 1975). The issue in this case concerns whether the home care workers were employees or independent contractors. Section 288.034.5 RSMo defines "employment" with regard to independent contractors as follows:

> Service performed by an individual for remuneration shall be deemed to be employment subject to this law unless it is shown to the satisfaction of the division that such services were performed by an independent contractor. *In determining the existence of the independent contractor relationship, the common law of agency right to control shall be applied. The common law of agency right to control test shall include but not be limited to:* if the alleged employer retains the right to control the manner and means by which the results are to be accomplished, the individual who performs the service is an employee. If only the results are controlled, the individual performing the service is an independent contractor.

(Emphasis added.)

Section 288.220.5 RSMo grants the Director of the Department of Labor and Industrial Relations ("Director") the statutory authority to promulgate regulations to efficiently and properly administer Missouri's Employment Security Law. Thus, in order to provide guidance to Missouri employers, the Director adopted 8 CSR 10–4.150, which directs as follows:

> (1) In order to interpret section 288.034.5, RSMo, effective June 30, 1989, the division shall apply the common law rules applicable in determining the employer-employee relationship under [I.R.C.], Section 3306(i). In applying the provisions of [I.R.C.], Section 3306(i) *the division shall consider the case law, Internal Revenue Service regulations and Internal Revenue Service letter rulings interpreting and applying that subsection.*

(Emphasis added.) Thus, we consult the Internal Revenue Code for guidance. For its definition of "employee," I.R.C.

§ 3306(i), which sets forth the definitions used for purposes of FUTA (Federal Unemployment Tax Act), references the definition of "employee" found in I.R.C. § 3121, which sets forth the definitions for purposes of FICA (Federal Insurance Contributions Act). I.R.C. § 3121(d)(2) defines an employee as "any individual who, *under the usual common law rules* applicable in determining the employer-employee relationship, has the status of an employee." (Emphasis added). The Code of Federal Regulations, at 26 C.F.R. § 31.3121(d)-1, provides the following additional guidance for determining who is an "employee" for employment tax purposes under the Internal Revenue Code:

c) Common law employees.

(1) Every individual is an employee if under the usual common law rules the relationship between him and the person for whom he performs services is the legal relationship of employer and employee.

(2) Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work, to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor. An individual performing services as an independent contractor is not as to such services an employee under the usual common law rules. Individuals ... engaged in the pursuit of an independent trade, business, or profession, in which they offer their services to the public, are independent contractors and not employees.

(3) Whether the relationship of employer and employee exists under the usual common law rules will in doubtful cases be determined upon an examination of the particular facts of each case.

In an effort to further assist the determination of employment status, the IRS issued Rev. Rul. 87–41, regarding who is an "employee" under the common law pursuant to I.R.C. § 3121(d) (FICA). Rev. Rul. 87–41's common law twenty-factor test for determining worker status can be summarized as follows:

1. **Instructions.** An employee must comply with instructions about when, where and how to work. Even if no instructions are given, the control factor is present if the employer has the right to control how the work results are achieved.

2. **Training.** An employee may be trained to perform services in a particular manner. Independent contractors ordinarily use their own methods and receive no training from the purchasers of their services.

3. **Integration.** An employee's services are usually integrated into the business operations because the services are important to the success or continuation of

the business. This shows that the employee is subject to direction and control.

**4. Services rendered personally.** An employee renders services personally. This shows that the employer is interested in the methods as well as the results.

**5. Hiring, supervising and paying assistants.** An employee works for an employer who hires, supervises, and pays assistants. An independent contractor can hire, supervise, and pay assistants under a contract that requires him or her to provide materials and labor and to be responsible only for the result.

**6. Continuing relationship.** An employee generally has a continuing relationship with an employer. A continuing relationship may exist even if work is performed at recurring although irregular intervals.

**7. Set hours of work.** An employee usually has set hours of work established by an employer. An independent contractor generally can set his or her own work hours.

**8. Full-time required.** An employee may be required to work or be available full-time. This indicates control by the employer. An independent contractor can work when and for whom he or she chooses.

**9. Work done on employer's premises.** An employee usually works on the premises of an employer, or works on a route or at a location designated by an employer.

**10. Order or sequence set.** An employee may be required to perform services in the order or sequence set by an employer. This shows that the employee is subject to direction and control.

**11. Oral or written reports.** An employee may be required to submit reports to an employer. This shows that the employer maintains a degree of control.

**12. Payment by hour, week or month.** An employee is paid by the hour, week, or month. An independent contractor is usually paid by the job or on a straight commission.

**13. Payment of business and/or traveling expenses.** An employee's business and travel expenses are generally paid by an employer. This shows that the employee is subject to regulation and control.

**14. Furnishing of tools and materials.** An employee is normally furnished significant tools, materials, and other equipment by an employer.

**15. Significant investment.** An independent contractor can make a significant investment in the facilities he or she uses in performing services for someone else.

**16. Realization of profit or loss.** An independent contractor can make a profit or suffer a loss.

**17. Works for more than one person or firm.** An independent contractor is generally free to provide his or her services to two or more unrelated persons or firms at the same time.

**18. Offers services to general public.** An independent contractor makes his or her services available to the general public.

**19. Right to fire.** An employee can be fired by an employer. An independent contractor cannot be fired as long as he or she produces a result that meets the specifications of the contract.

**20. Right to quit.** An employee can quit his or her job at any time without incurring liability. An independent contractor usually agrees to complete a specific job and is responsible for its

satisfactory completion, or is legally obligated to make good for failure to complete it.

Rev. Rul. 87–41 at 298–99; *see, e.g., Stover Delivery Sys., Inc. v. Div. of Employment Sec.,* 11 S.W.3d 685, 691–96 (Mo.App. W.D. 1999) (setting forth the twenty factors in full and applying them to determine that a courier company's route drivers were employees rather than independent contractors). We discuss the application of these factors to this case in our analysis of Appellants' Point III.

Worker classification is a complex subject. The crux of the common law employee-versus-independent contractor question is the "control test." As explained in the ruling, the IRS devised the twenty factors to assist the employer, for tax purposes, in determining "whether sufficient control is present to establish an employer-employee relationship." Rev. Rul. 87–41 at 298–99. This ruling further explains that "[t]he twenty factors have been developed based on an examination of cases and rulings considering whether an individual is an employee. The degree of importance of each factor varies depending on the occupation and the factual context in which the services are performed." *Id.* These twenty factors have been consistently used as an aid for determining whether an individual is an employee or independent contractor under the common law rules, with "special scrutiny [ ] required in applying the twenty factors to assure that formalistic aspects of an arrangement designed to achieve a particular status do not obscure the substance of the arrangement." *Id.* In determining employee-versus-independent contractor status, this court has also consistently used this twenty-factor test. *See, e.g., Travelers Equities,* 927 S.W.2d at 921–25, and *Bedford Falls Co. v. Div. of Employment Sec.,* 998 S.W.2d 851, 857–60 (Mo.App. W.D.1999).

Appellants now argue that the twenty-factor test is no longer the appropriate test to determine employment status. Specifically, they rely on Chapter 5, "Technical Guidelines for Employment Tax Issues" of the IRS Handbook 104.6 (April 21, 1999), Employment Tax Handbook ("Handbook"), which sets forth three broad categories under which the IRS examiners evaluate the facts to determine whether workers are employees or independent contractors. *Available at* http://www.irs.gov/prod/bus___info/tax___pro/irm-part/part04/35225a.html. The Handbook contains guidelines that are intended to interpret sections of the IRS Code to clarify the intent of those sections. *Id.* at § 5.1. Sections 5.5 through 5.8.2 of the Handbook address the issue of distinguishing between an employee and an independent contractor for federal tax liability purposes. Section 5.6.2 discusses the factual aspects of the employment relationship as it relates to evidence of both autonomy and the right to control; it refers the examiner to Exhibit [104.6] 5–1 (4/21/99) of the Handbook for the "types of evidence that help to determine control in the common-law employer-employee relationship." This Exhibit [104.6] 5–1 classifies these types of evidence under three broad categories or primary indices of control: (1) "Behavioral Control," (2) "Financial Control," and (3) "Relationship of the Parties." Each of these broad categories itemizes more specific "[f]acts which illustrate whether there is a right to direct or control how the worker performs the specific task for which he or she is hired." *Id.* IRS Form SS–8 (Rev. Jan. 2001), completed by an employer and returned to the IRS to determine whether the employer is liable for *federal* employment taxes and income withholding, also incorporates the factors in questions asked of an employer under the same three broad "control" categories. Prior to this revision, this form was ar-

ranged in accordance with the twenty-factor test. Likewise, IRS Publication No. 15–A, Employer's Supplemental Tax Guide 5 (rev.Jan.2001) now uses the three broad categories to organize the facts that provide evidence of the degree of control and independence. Appellants argue that this new "categorical" approach was intended to replace the Rev. Rul. 87–41's twenty-factor test. We disagree.

■■■ Upon review of each of the above-referenced IRS documents concerning employment status determinations, it is clear that the IRS did not intend to make obsolete the twenty-factor test set forth in its Rev. Rul. 87–41. Rather, the grouping of the twenty factors into the three categories represents a change in organizational structure to provide clarity to the "employee-versus-independent contractor" inquiry and to reflect the long-standing recognition by the IRS that the twenty factors are not all-inclusive. Although the twenty factors are now grouped under broad category headings and are not the only factors to consider, they remain clearly relevant to the inquiry. Since Rev. Rul. 87–41 was issued, the factors have always been intended as *guides* or *aids* in determining employment status. The factors are not intended to serve as a bright-line rule with no flexibility, but rather they are indices of control to assist the employer in attempting, for tax purposes, to determine the common law employment status of its workers. Not every factor is applicable in every situation, and each case is decided on the basis of its own facts. The degree of importance attached to each factor varies depending on the type of work and individual circumstances, and the relevant factors should be considered in inquiring about employment status with no one factor being decisive. Whether using the twenty-factor test or the "3–category" approach, "the bedrock is still

the common law agency test of the right to control the manner and means of performance." *Travelers Equities*, 927 S.W.2d at 925.

In support of our conclusion that the twenty factors are still viable, we again consult the IRS Handbook referenced above. Section 5.8.1 of the Handbook recognizes the formulation of the twenty-factor test after the IRS analyzed the courts' approaches toward questions to be asked in considering employment status. It goes on to state that:

> [T]hese are not the only factors that may be important, and in certain cases some of the traditional twenty factors may be disregarded as unimportant. Every piece of information in a case that helps the extent to which a firm does or does not retain the right to control the worker is important.

IRS Handbook [104.6] § 5.8.1(2). In addition, although not to be used or cited as precedent, IRS Field Service Advisory Number 200127004, issued July 6, 2001, available at 2001 WL 757802, lends further support to our finding that the categories were not intended to nullify the twenty-factor test, but instead were intended to act as additional guidance in the employment status inquiry. This Advisory discusses the issue of determining whether certain workers were common law employees of a company. 2001 WL 757802. Due to the lack of developed facts in that particular case, the Advisory was unable to issue technical advice containing a conclusion. *Id.* Nonetheless, it did offer the employer that sought the advisory the following guidance:

> In determining whether an individual is an employee under the common law rules, twenty factors have been identified as indicating whether sufficient control is present to establish and [sic] employer-employee relationship. The

twenty factors have been developed based upon an examination of cases and rulings considering whether an individual is an employee. The degree of importance of each factor varies depending upon the occupation and the factual context in which the services are performed. See Rev. Rul. 87–41, 1987–1 C.B. 296, 298–99.

Because of the difficulty in *strictly* applying the twenty factor test in determining whether an individual is an employee or an independent contractor under the common law, all evidence of both control and lack of control or autonomy must be considered. In doing so, one must examine the relationship of the worker and the business. Relevant facts generally fall into three categories: (1) behavioral controls, (2) financial controls, and (3) relationship of the parties.

*Id.* (emphasis added). The Advisory continues by explaining in more detail the three broad categories, under which the relevant facts generally fall. These categories incorporate several of the twenty factors. Appellants do not point to, nor did we find any indication that these "categories" were intended to make the twenty-factor test inapplicable. In fact, as set forth above, our research indicates that the test has merely been broadened or reorganized to reflect the difficulties that can arise in making these determinations.

Accordingly, we hold that the Commission did not err in analyzing the employment status of the workers under the twenty-factor test set forth in Rev. Rul. 87–41. Appellants' first point on appeal is denied.

### Point II

In their second point on appeal, Appellants allege that the Commission erred in not finding that the workers were "sitters" as set forth in I.R.C. § 3506(b) (1999).

I.R.C. § 3506, titled "Individuals providing companion sitting placement services," reads in relevant part as follows:

(a) In general. *For purposes of this subtitle,* a person engaged in the trade or business of putting sitters in touch with individuals who wish to employ them shall not be treated as the employer of such sitters (and such sitters shall not be treated as employees of such person) if such person does not pay or receive the salary or wages of the sitters and is compensated by the sitters or the persons who employ them on a fee basis.

(b) Definition. *For purposes of this section,* the term "sitters" means individuals who furnish personal attendance, companionship, or household care services to children or to individuals who are elderly or disabled.

(Emphasis added.) Appellants' argument is somewhat complex and is more easily understood when considered in the following series of steps:

*Step 1:* As set forth above in our discussion of Appellants' Point I, in determining who is an "employee" under section 288.034.5 RSMo, 8 CSR 10–4.150 directs the Division to apply the common law rules applicable in determining the employer-employee relationship under I.R.C. § 3306(i) of the Federal Unemployment Tax Act (FUTA).

*Step 2:* Section 3306(i) defines "employee" for FUTA purposes by referring to the definition of "employee" set forth in I.R.C. § 3121(d) of the Federal Insurance Contributions Act (FICA).

*Step 3:* The "sitter" provision in section 3506 by its terms applies to "Subtitle C—Employment Taxes" of the Internal Revenue Code. Sections 3306(i) and 3121(d) are also part of this Subtitle C. Thus, the § 3506 "sitter" provision is

applicable to exempt "sitters" under both FUTA and FICA.

*Step 4:* Section 288.032.1(10) RSMo provides that an "employer" includes any employing unit subject to FUTA. Appellants rely on *Travelers Equities,* 927 S.W.2d at 921, for their argument that, for purposes of consistent treatment of employers by the federal and state tax acts, when determining a worker's status under Missouri's Employment Security Act, we should consult federal decisions under similar federal employment tax laws (FICA and FUTA). Appellants claim that the workers are "non-employees" under FUTA, because the workers are considered "sitters" pursuant to § 3506. Thus, they claim that they are excluded as "employers" under FUTA, so they should also be excluded under section 288.032.1(10) RSMo.

*Step 5:* Thus, Appellants claim that the Commission erred in finding them liable for employment tax contributions for the workers under the Missouri Employment Security Act.

■ We need not discuss whether I.R.C. § 3506 operates to exclude potential employers from the Missouri Employment Security Act as argued by Appellants. As explained below, the workers are not "sitters" under § 3506. Thus, § 3506 will not exclude Appellants as employers of "sitters" under FUTA. Therefore, even if § 3506 were found to be applicable to Missouri's Employment Security Law, it would not operate to exclude Appellants from responsibility thereunder.

In support of their argument that the workers are "sitters" under I.R.C. § 3506, Appellants rely on an example employment situation set forth in the Code of Federal Regulations at 26 C.F.R. 31.3506–1, 312 (Rev. Jan. 2001). Prior to setting forth examples of coverage thereunder, 26 C.F.R. 31.3506–1 states in relevant part as follows:

(a) Definitions—(1) Companion sitting placement service. For purposes of this section, the term "companion sitting placement service" means a person (whether or not an individual) engaged in the trade or business of placing sitters with individuals who wish to avail themselves of the sitters' services.

(2) Sitters. For purposes of this section, the term "sitters" means individuals who furnish personal attendance, companionship, or household care services to children or to individuals who are elderly or disabled.

(b) General rule. For purposes of subtitle C of the Internal Revenue Code of 1954 (relating to employment taxes), a companion sitting placement service shall not be treated as the employer of its sitters, and the sitters shall not be treated as the employees of the placement service. However, the rule of the preceding sentence shall apply only if the companion sitting placement service neither pays nor receives (directly or through an agent) the salary or wages of the sitters, but is compensated, if at all, on a fee basis by the sitters or the individuals for whom the sitting is performed.

\* \* \*

(d) Scope of rules. The rules of this section operate only to remove sitters and companion sitting placement services from the employee-employer relationship when, under Secs. 31.3121(d)–1 and 31.3121(d)–2, that relationship would otherwise exist. Thus, *if, under Secs. 31.3121(d)–1 and 31.3121(d)–2, a sitter is considered to be the employee of the individual for whom the sitting is performed rather than the employee of the companion sitting placement service,*

*this section has no effect upon that employee-employer relationship.*

(Emphasis added.) Subsection (e) then sets forth the following "Example 2," [4] which Appellants claim supports their argument:

> X is an agency that places babysitters with individuals who desire babysitting services. X furnishes all the sitters with an instruction manual regarding their conduct and appearance, requires them to file semimonthly reports, and determines the total fee to be charged the individual for whom the sitting is performed. Individuals who need a babysitter contact the agency, are informed of the charges, and, if agreement is reached, a sitter is sent to perform the services. [T]he individual for whom the sitting is performed pays to X the entire amount of the charges. X retains a percentage and pays the difference to the sitter. Since X actually receives and pays the wages of the sitters, X is the employer of the sitters.

26 C.F.R. 31.3506–1. Appellants maintain that X is Loving Home Care Service—the "business" established by Ms. Jones and Ms. Brockman—and that Loving Home Care Service is the actual employer of the sitters. Appellants further maintain that they did not pay the workers directly, but rather, in accordance with their trusts' contracts with Loving Home Care, "the trusts, *as a payroll service,* issued checks to the workers and remitted the balance to the agency." (Our emphasis.) However, the Commission, in adopting the findings of the Appeals Tribunal, specifically rejected Appellants' "payroll service" argument

and found that *Appellants,* "the individual[s] for whom the sitting was performed" in the example above, *paid the sitters, not X.* These findings are supported by substantial evidence in the record and are not against the overwhelming weight of the evidence. Thus, they are binding upon this court. Having found that I.R.C. § 3506 (FUTA) does not operate to exclude Appellants as employers and therefore would not exclude them under section 288.032.1(1) RSMo, we need not decide the effect of that section upon Missouri Employment Security Law.

Point II is denied.

### Point III

In their third and final point on appeal, Appellants assert that the Commission erred in finding, under the common law agency right of control, that Appellants paid "wages" in "employment" under section 288.034 RSMo. They contend that the issue of who is the employer is a question of law under section 288.210 RSMo and that instead of finding Appellants responsible, the Commission should have found Ms. Jones and Ms. Brockman to be the workers' employers.

As set forth in our discussion of Appellants' Point I, in determining under the common law agency right to control standard whether Appellants were in fact the employers of the workers, the Commission used the twenty-factor test, which is also set forth, in full, in Point I. In concluding that the workers performed services for "wages" in "employment" for Appellants, the Commission found as follows: [5]

---

**4.** As directed in "Example 2," the facts are taken from "Example 1" of the regulation.

**5.** The Commission's decisions in Appellants' cases adopted the findings of the Appeals Tribunal, so we are citing the findings from those decisions. Because the two decisions

were virtually identical, except where specific facts differentiated between the two, we have loosely quoted (without quotation marks) from both of the decisions as one, incorporating these differences where necessary for simplicity reasons. We have added the numeri-

The factors used by the Internal Revenue Service for determining the existence of the employer-employee relationship have been considered. There are many factors which point to the conclusion that the workers were employees. (1) The Appellants gave instructions directly, and indirectly by their trustees and attorney, to the workers. (2) Most of the workers did not receive or need any training, but Ford received some training from Jones. (3) If Appellants could be said to have a "business" it might be called staying healthy and living in their homes. The services of the workers were integrated or merged into that business. (4) The services were to be performed personally. (6) There was a continuing relationship between Appellants and the workers. (5) It could be said that Brockman and Jones were acting as supervisors of the other workers for the Appellants. (7) Brockman and Jones made the schedule of the workers for the Appellants, setting hours and days of work. (8) Brockman and Ford worked full time for [Ms. Klausner]. Jones worked full time for [Mr. Hanus]. (17) Brockman continued her work at the nursing home. Jones also continued her work at the nursing home for some of the time involved. (9) The workers performed the services at the Appellants' homes. (10) The Appellants set an order and sequence of work in some ways. (11) Ford and Brockman made written reports about some of the things that happened with Ms. Klausner, in case the information was needed by Mr. Fletcher or medical care providers. (12) The workers were paid by the hour and weekly. (14) The workers did not have to provide any equipment. Everything needed to care for Appellants was provided at their homes. (15) There was no

evidence in the hearing record showing that Brockman, Jones or any of the workers had a significant investment in an independent business. (16) The workers were paid an hourly wage and did not have an opportunity to make a profit or suffer a loss. It is believed the additional payment to Brockman and Jones was in the nature of additional compensation for the extra work and supervision they performed. (17) Ford performed this kind of service only for Ms. Klausner. Brockman and Jones had jobs at a nursing home. They also performed services for Appellants. (18) These workers did not make their service available to the public by advertising or trying to get other business as home health care service providers. (19) The appellant had the right to discharge these workers. (20) These workers had the right to quit.

Factors and evidence pointing to the conclusion that the workers were independent contractors include the following: Brockman and Jones signed the document saying that they would be independent contractors; the other workers signed documents saying they would be independent contractors; (1) the workers knew how to do this work without needing much in the way of instructions; (2) there was almost no training of the workers; (8) the workers were not required to perform full-time service exclusively for the Appellants; and (11) written reports were not required, even if some written reports were made.

■ Appellants argue that even using the twenty-factor test, the Commission erred in finding that the workers were Appellants' employees. Each fact they point to in support of their position was before and properly considered by the Commission. For example, Appellants

cal designations which relate to the twenty

factors previously set out.

point to the careful steps that Mr. Fletcher took to establish a "business" for Ms. Jones and Ms. Brockman and to arrange for "independent contractors" to care for Appellants. In its decision, the Commission acknowledges this arrangement, or at least Mr. Fletcher's attempt to shield his clients from tax liability for the workers. Nonetheless, the Commission concluded that "the evidence plainly shows, even though Appellants wanted to have independent contractors, and the workers were willing to go along with being called independent contractors (at least until they found out the consequences), that [sic] the workers simply were not independent contractors." While a contractual designation of the status of a worker is relevant "it is not conclusive when there is evidence to overcome that designation." *Miller v. Hirschbach Motor Lines, Inc.*, 714 S.W.2d 652, 656 (Mo.App. S.D.1986), superseded by statute on other grounds in *Booth v. Trailiner Corp.*, 21 S.W.3d 869 (Mo.App. S.D.2000).

In reality, Ms. Brockman and Ms. Jones never had a going business of their own. It was devised and implemented by Mr. Fletcher. They never advertised or sought other clients. They had no bonding, liability or workers compensation insurance, phones, or business cards. All of the workers were paid directly by Mr. Fletcher and/or Mr. Weingart based upon receipts and time sheets they were required to submit.

█ Appellants had the right to and did instruct and direct Ms. Brockman, Ms. Jones and the other workers as to the manner in which they were to perform their tasks, either directly or through Mr. Fletcher and Mr. Weingart. Ms. Klausner, especially, gave detailed instructions including when and how to clean and when, how, and what to cook. Ms. Brockman testified that she sometimes did things differently than she normally would have as a professional caregiver because she was instructed to do so. Before deciding on a number of matters, the workers first had to check with Mr. Fletcher. The Appellants had a right and did to a large degree control the performance of these individuals as they rendered the requested services. We have carefully examined the Commission's consideration of and application of the twenty factors used to assist in determining whether the workers were common law employees of Appellants and have found no error. As we pointed out previously in this opinion, "[u]ltimately, the bedrock principle is the common law agency test of the right to control the manner and means of performance" of a worker. *Stover*, 11 S.W.3d at 696. Pursuant to our standard of review, we can only conclude that Appellants "exercised overall control of the manner and means of performance" and that the workers were in fact Appellants' employees, not independent contractors. *Id.* at 698.

Point III is denied.

## Conclusion

For the foregoing reasons, we hold that the twenty-factor test for common law employment set forth in Rev. Rul. 87–41 has not been abolished and may still be used to assist in determining whether a worker is an employee or an independent contractor. We further hold that the Commission did not err, using the twenty-factor test, in finding that the workers performed services for "wages" in "employment" as those terms are respectively defined in sections 288.036 and 288.034 RSMo. I.R.C. § 3506 and its provisions pertaining to "sitters" does not operate to exclude Appellants as employers of "sitters" under FUTA, so we need not determine whether that section is applicable to Missouri's Employment Security Act. Therefore, we deny

Appellants' points on appeal and affirm the Commission's decisions in Ms. Klausner's and Mr. Hanus' cases.

EDWIN H. SMITH, P.J., and BRECKENRIDGE, J., concur.